RICHARD PERSSON, an Infant, by ERIC O. PERSSON, His Guardian ad Litem, et al., Plaintiffs, *v.* UNITED PARCEL SERVICE OF NEW YORK, INC., et al., Defendants.

Supreme Court, Pre-Trial Term, New York County, March 11, 1952.

*Albert W. Richman* and *Benjamin Schleider* for plaintiffs.

No appearance for defendants.

MATTHEW M. LEVY, J. A proposed order of compromise of the infant's cause of action, together with the supporting papers, has been presented to me for approval. The infant, as well as his mother and father (the latter is the guardian ad litem), and their attorney, appeared before me in chambers in accordance with usual procedure.

The infant plaintiff, when six years of age, was injured as he was running across a busy street some distance from an intersection and was knocked down by or ran into the defendants' truck. At pretrial, negotiations between the parties, aided by the court, resulted in an offer of $3,750 to the infant plaintiff, the father's claim for loss of services, expenses, etc., being waived. I am satisfied that the offer of settlement for the infant's cause of action is fair and reasonable under all the circumstances. The liability of the defendants is not clear, and in any event is difficult of proof; the infant's injuries, though serious, are not permanent. And I would ordinarily sign the order of approval of the settlement submitted by plaintiffs' attorney, were it not for the fact that the proposed order provides that it is " Ordered that out of the settlement funds herein, there be paid by the defendants the sum of $1063.75 to [a named] Hospital in full settlement of its lien herein ". The hospital's claimed lien thus amounts to approximately 30% of the entire settlement. After deducting this bill of $1,063.75 from the $3,750 settlement, only $2,686.25 remains — and out of that sum, payment of the attorney's reasonable charges and appropriate litigation disbursements must be made.

Requests by the plaintiffs' attorney to obtain a reduction of the hospital bill have been unsuccessful, and I am informed that the guardian is not desirous of taking the necessary legal steps to obtain relief, even though he complains that the charges seem unfair. Much as I would like to comply with the request of the guardian and his attorney that the hospital bill as is be paid in full without further inquiry or attention, I cannot be so judicially docile, even though I might thereby avoid additional work on their part — or that of the court. My primary duty on the present application is to the infant, who is a ward of the court, and every effort should be made to protect his interests. The guardian, as the court's appointee, and his attorney, have the duty of aiding the court in the discharge of this responsibility.

It would simplify matters were I able to direct that the hospital, through its attorneys (who have refused the reduction), and the plaintiffs, through their attorney, appear before me, and at such time require the hospital to submit a detailed explanation of questioned items. But I doubt whether I have the power to make such direction, and I do not propose to engage the court in a supplicatory plea which may be rejected. The enforcement of hospital liens is regulated by statute, and the provisions of the Lien Law in that regard must be followed. (For a history of this matter, see 1949 Report of N. Y. Law Revision Commission, " Act, Recommendation and Study relating to Determination of the Validity and Extent of Hospital Liens in Advance of Judgment or Settlement in Personal Injury Action ", pp. 293–363, and 1950 Report of N. Y. Law Revision Commission, " Act and Recommendation relating to Determination of the Validity and Extent of Hospital Liens in Advance of Judgment or Settlement in Personal Injury Actions and Actions for Wrongful Death ", pp. 49–60.)

The hospital bill (which I asked plaintiffs' attorney to submit to me) shows that a charge has been made this infant for ward board of $9.25 per day and for convalescent hospital board of $6 per day. Separate charges are made for specific laboratory tests and analyses, for X rays, for the use of the operating room, for penicillin units, etc. The hospital bill is fully itemized as to all such details. Then there is a further charge entitled " UNIT FEE — To Include 2-Months Aftercare $500.00." This " unit fee " is almost half of the entire hospital bill and is in no way explained.

Subdivision 1 of section 189 of the Lien Law gives the hospital in a case such as this a lien " for the amount of the *reasonable charges* of such hospital, for such treatment, care and maintenance of such injured person at *cost rates* in such hospital ". (Italics mine.) Pursuant to subdivision 6-a of the same section (added by L. 1950, ch. 656, § 2) any interested party may, on due notice, make an application to this court, where the present action is pending, to determine the validity and to fix the amount of the lien.

Upon inquiry, I was informed by plaintiffs' attorney that two assignments were made to the hospital in order to obtain an inspection of its records incident to counsel's preparation for the conduct of the litigation; and at my request copies of the assignments were submitted to me. Neither assignment, so far as the copies presented to me indicate, is dated. One assignment appears to be signed by the infant's mother (who is not a plaintiff) and witnessed by one " M. Campbell "; the other appears to be signed by the infant's mother and the infant (now ten years of age) and witnessed by the infant's father. They both provide that " If the person treated is an infant, this agreement shall apply to my [the assignor's] share or liability as parent or guardian ad litem." By their express terms, the assignments are " independent of section 189 of the Lien Law ".

It may be that by virtue of the assignments (if they are proper, valid and effective) the summary procedure outlined in the Lien Law to resolve controversies arising out of attempted enforcement of the lien as such cannot be invoked in the face of the hospital's objection. A plenary action, as distinguished from the special proceeding recently authorized by the Legislature, may be necessary. I do not undertake to resolve this question; it is not *sub judice* now. There seem to be advantages of a sort to one party or the other — dependent upon the choice of the remedy invoked. In one case the prima facie proof may be technically different from the other (see Civ. Prac. Act, § 374-a, as amd. by L. 1950, ch. 656). The expenses imposed may or may not be the same in both instances (cf. Lien Law, § 189, subd. 6-a, with Civ. Prac. Act, § 322, subd. 3; and see provisions for statutory costs in actions and proceedings in the several courts). In either case, a jury trial may be had if desired (see Lien Law, § 189, subd. 6-a; Civ. Prac. Act, §§ 425, 426, and similar provisions in the codes for lower courts of record). Perhaps some delay may, because of calendar congestion in any particular court, result from the utilization of a plenary suit rather than of summary process. I think I should say, too,

that while subdivision 6-a speaks of " reasonable " charges " at cost rates " in said hospitals, such as are charged to " workmen's compensation patients ", there is a notation on the bill that it " is at liability rates " — that is not necessarily the same as " cost rates " or " workmen's compensation rates "; and the assignments refer to " the Minimum Fee Schedule filed by the Medical Society of the State of New York and established by the State Industrial Commissioner, made part hereof by reference, used by said hospital for public liability and compensation cases." There may be other points of similarity or difference, but whether one procedure or the other is adopted the issue fundamentally is the same — is the hospital's charge fair and reasonable in the light of the facts and agreements and statutes? That must be resolved before I direct willy-nilly the payment of its present bill in this case.

I may say in passing that upon examination of the assignments I noted that in one of them the charge is $8.60 per day for bed, board and routine nursing care, and in the other the charge for the same items is $9.25 per day. No explanation of the difference in the daily charge was submitted to me and, as I have said earlier, the hospital bill itself shows that the charge sought to be collected is $9.25 per day. Both assignments provide, among other things, that clinic treatment is to be charged at the rate of $2.50 per department visit — and that the charge " for x-rays, laboratory tests, physiotherapy, medical care, unit surgical fees or other services " is to be " at specialist rates in accordance with the Minimum Fee Schedule " already referred to. Whether that charge, if valid, is more or less than the $500 " unit fee " does not appear.

What is to be done? If the plaintiffs were required to risk the doubtful success of ultimate trial of the case in chief, the infant might receive nothing — and so would the hospital, for in view of plaintiffs' indigence its bill would in all likelihood continue to remain unpaid forever. This would, I assume, not be too disturbing to the hospital involved, because it is recognized to be " incorporated under general law or special act as a charitable institution," " supported in whole or in part by charity " (Lien Law, § 189, subd. 1). On the basis of the pretrial compromise, while little enough will be left for the infant, a principal beneficiary resulting from counsel's and the court's efforts in negotiating a difficult settlement will be the hospital. Yet, it is the injured infant alone who will be burdened with the entire expense of the litigation; the hospital will enjoy the windfall of having its bill paid in full. This is all right, I sup-

pose, if the hospital charges in this case are proper, fair and reasonable. It is definitely not right if the amount of the charge is unjustified.

I have decided not to inflict upon the infant plaintiff the gamble of continued litigation of the negligence action, but rather to approve the settlement of the infant's cause of action in all respects, except that a revised order is to be submitted so as to provide that the sum of $1063.75, being the amount of the claimed hospital bill, be deposited by the defendants with the treasurer of the City of New York (Lien Law, § 189, subd. 9). In this way the hospital may enforce its lien by instituting an action at law (Lien Law, § 189, subd. 10), or proceed to enforce its assignments, or, if the hospital or the plaintiffs are so inclined, a motion may be made to fix the amount of its lien without resort to a plenary suit (Lien Law, § 189, subd. 6-a).

The attorney for the plaintiffs is directed to serve a copy of this opinion and the order entered thereon upon the hospital involved so that it may be given due notice of my determination in this matter. I do not intend by what I have said to be critical of the plaintiffs or their counsel or of the hospital. So far as the hospital is concerned, it is not before me and its views have not been presented to me; and I am not unmindful of the established policy behind the needed legislative protection of a charitable hospital's just charges in accident cases. What I do say is that I as a judge cannot be expected to ignore the facts as I have gleaned them.